UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KROLL, INC. and KROLL ASSOCIATES, INC., | |
| *Plaintiffs,* | Case No. 06-CV-04657 (RJH) **ECF CASE** |
| -*against*- | |
| FRANK L. HOLDER, FERRELL LAW, P.A., and FERRELL INVESTIGATIONS & SECURITY INC., | **DECLARATION OF** <u>**JEFFREY M. EILENDER**</u> |
| *Defendants.* | |

Pursuant to 28 U.S.C. § 1746, **JEFFREY M. EILENDER** hereby declares the following to be true under penalty of perjury:

1.      I am a member of Schlam Stone & Dolan LLP, counsel to Frank L. Holder, a Defendant in the above-captioned action.  I respectfully submit this Declaration in support of Mr. Holder's renewed motion: (a) requiring Plaintiffs Kroll Inc. and Kroll Associates, Inc. (collectively, "Kroll") immediately to pay advances to Mr. Holder for the legal fees and costs that he has incurred and will incur in the defense of this action, pursuant to Article VI, Section 2 of the July 7, 2004 Employment Agreement (the "2004 Employment Agreement") among Mr. Holder, Plaintiff Kroll, and Marsh USA ("Marsh"), the By-Laws for Marsh, and Section 145 of the Delaware General Corporation Law; (b) requiring Kroll to indemnify Mr. Holder now with respect to the claims Kroll has already withdrawn or on which Mr. Holder has otherwise prevailed; and (c) staying this case until the motion is determined and such advances are paid.

2.      Unless otherwise specified, the matters set forth herein are based on my personal knowledge or review of the documents in my firm's files.

3.      Attached hereto as Exhibit 1 is a copy of the Marsh & McLennan Company By-Laws which at Article VI, Sections 2and 3 provides for the right to receive advances against

legal fees and cost incurred in an action brought against Mr. Holder.

4.      Attached hereto as Exhibit 2 is the Amended Complaint.

5.      Attached hereto as Exhibit 3 is a copy of the Employment Agreement, dated July 7, 2004 (the "2004 Employment Agreement") by and among Marsh USA, Inc. (the parent company for Kroll), Kroll, Inc., and Mr. Holder.

6.      Attached hereto as Exhibit 4 is the amendment to the Employment Agreement, dated as of July 7, 2004.

7.      Attached hereto as Exhibit 5 is a letter dated January 28, 2005 to Mr. Holder from Sabrina H. Perel, Esq., Executive Vice President and General Counsel for Kroll, memorializing the termination of Mr. Holder's employment at Kroll (the "Termination Letter").

8.      Attached hereto as Exhibit 6 is the January 28, 2005 Consulting Agreement (the "Consulting Agreement") between Mr. Holder and Kroll.

9.      Attached hereto as Exhibit 7 is a letter dated July 14, 2008 from myself to Paul Corcoran, Esq., counsel to Kroll, requesting that Kroll immediately pay advances to Mr. Holder because this case was predicted on a breach of fiduciary duty by Mr. Holder as an officer of Kroll.

10.     Attached hereto as Exhibit 8 is July 22, 2008 letter to me from Mr. Corcoran stating that Kroll was not required to indemnify Mr. Holder because its claims against him were based solely on conduct that he committed after he was an officer – that is once the 2005 Consulting Agreement had already become effective:

> Contrary to your letter's assertion, Article VI, § 1 of the Marsh By-Laws does not entitle Mr. Holder to indemnification for his defense costs.    On its face, that Section provides fro indemnification of legal expenses and costs arising out of the actions of a 'director, officer or employee' of the corporation and only applies to suit seeking damages for the actions by Defendant

> in his official capacity as a 'director, officer or employee,' or in
> any other capacity *while serving* as a 'director, officer or
> employee' of the corporation. The present suit is not covered by
> that provision. As per the parties' [July 27, 2007] Stipulation in
> open Court last year, Plaintiffs' claims are limited to damages
> flowing from breach of your client's 2005 Consulting Agreement.
> (Emphasis in the original).

11.     In that same letter, Mr. Corcoran states that he will let me know if Kroll intends to

assert any claims regarding misconduct occurring while Mr. Holder was an officer, but at present

there are no such claims. (*Id.*)

12.     Attached hereto as Exhibit 9 is Mr. Holder's brief in support of his motion to

dismiss the Amended Complaint. In this brief, based on the transcript of the July 27, 2007

conference and Mr. Corcoran's letter to me, Mr. Holder argued that Paul Kroll had withdrawn

any breach of fiduciary duty or constructive fraud claim at the July 27, 2007 conference. *See* Ex.

9 at pages 1, 3, 8-10, 14, 16-17.

13.     Attached hereto as Exhibit 10 is the November 4, 2008 brief by Kroll in

opposition to the motion to dismiss. At page 9 of the opposition brief, and contrary Mr.

Corcoran's letter to Mr. Eilender, Kroll denied withdrawing any such claims: "Kroll has never

withdrawn any claims based on Holder's conduct taken in connection with the 2005 Consulting

Agreement, **regardless of when that conduct occurred,** including its claim that Holder

fraudulently induced Kroll into signing the 2005 Consulting Agreement. At the July 27, 2007

hearing, Kroll merely represented to the Court that this action was not subject to mediation

because the 2004 Employment Agreement, which contained the mediation provision, was not at

issue here."

14.     Attached hereto as Exhibit 11 is the Reply brief of Mr. Holder in further support

of his motion to dismiss in which he further argues that Kroll waived certain claims based on Mr.

Corcoran's correspondence. *See* Ex. 11 at pgs 1-4.

15.     Attached hereto as Exhibit 12 is the Undertaking of Good Faith by Mr. Holder which was included in my letter of July 14, 2008 to Mr. Corcoran.

16.     Attached hereto as Exhibit 13 are the entries for the fees and costs that Mr. Holder has incurred on this case from my firm.

17.     Attached hereto as Exhibit 14 are the entries for the fees and costs that Mr. Holder incurred on this case during the time Ferrell Law, P.A. represented him.

Dated: New York, New York
       February 13, 2009

JEFFREY M. EILENDER

# Exhibit 1

# Marsh & McLennan Companies/Inc · 8-K · For 3/21/05 · EX-3

### Filed On 3/21/05 5:26pm ET · SEC File 1-05998 · Accession Number 62709-5-94

[ Find ]                              in  this entire Filing.        Show Docs searched        and  every "hit".

| As Of | Filer | Filing | As/For/On | Docs:Pgs |
|---|---|---|---|---|
| 3/21/05 | Marsh & McLennan Companies/Inc | 8-K(5,9) | 3/21/05 | 2:12 |

### Current Report · Form 8-K
### Filing Table of Contents

| Document/Exhibit | | Description | Pages | Size |
|---|---|---|---|---|
| 1: 8-K | March 16, 2005 | | HTML | 16K |
| 2: EX-3 | March 16, 2005 | | HTML | 69K |

--

### EX-3 · March 16, 2005

*This is an EDGAR HTML document rendered as filed. [ Alternative Formats ]*

| *EX-3* | *1st Page of 9* | TOC | Top | Previous | Next | Bottom | Just 1st |
|--------|-----------------|-----|-----|----------|------|--------|----------|

**Exhibit 3.1**

## BY-LAWS

## OF

## MARSH & McLENNAN COMPANIES, INC.

## RESTATED AS LAST AMENDED

## March 16, 2005

| *EX-3* | *2nd Page of 9* | TOC | 1st | Previous | Next | Bottom | Just 2nd |
| --- | --- | --- | --- | --- | --- | --- | --- |

# I N D E X

Page Number

ARTICLE I

    Offices..................................................................................................................................................................1

ARTICLE II

    Meetings of the Stockholders.......................................................................................................................1

ARTICLE III

    Directors..............................................................................................................................................................6

ARTICLE IV

    Officers...............................................................................................................................................................8

ARTICLE V

    Committees.......................................................................................................................................................10

ARTICLE VI

    Indemnification................................................................................................................................................12

ARTICLE VII

    Checks, Contracts, Other
Instruments.........................................................................................................................................................15

ARTICLE VIII

    Capital Stock....................................................................................................................................................16

ARTICLE IX

    Miscellaneous..................................................................................................................................................18

ARTICLE X

    Amendments....................................................................................................................................................18

## BY-LAWS

### OF

### MARSH & McLENNAN COMPANIES, INC.

### ARTICLE I

#### Offices

The principal office of the Corporation in Delaware shall be at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle, in the State of Delaware, and The Corporation Trust Company shall be the resident agent of the Corporation in charge thereof. The Corporation may also have such other offices at such other places as the Board of Directors may from time to time designate or the business of the Corporation may require.

### ARTICLE II

#### Meetings of the Stockholders

SECTION 1. Place of Meetings. Meetings of the stockholders may be held at such place as the Board of Directors may determine.

SECTION 2. Annual Meetings. The annual meeting of the stockholders shall be held on the third Thursday of May in each year, or such other day in May as may be determined from time to time by the Board of Directors, at such time and place as the Board of Directors may designate. At said meeting the stockholders shall elect a Board of Directors and transact any other business authorized or required to be transacted by the stockholders.

SECTION 3. Special Meetings. Special meetings of the stockholders, except as otherwise provided by law, shall be called by the Chairman of the Board or Lead Director, as the case may be, or whenever the Board of Directors shall so direct, the Secretary.

SECTION 4. Notice of Meetings. Except as otherwise provided by law, written or printed notice stating the place, day and hour of the meeting, and in the case of a special meeting the purpose or purposes for which the meeting is called, shall be delivered personally, electronically, or mailed, postage prepaid, at least ten (10) days but not more than sixty (60) days before such meeting to each stockholder at such address as appears on the stock books of the Corporation.

SECTION 5. Fixing of Record Date. In order to determine the stockholders entitled to notice of or to vote at any meeting of the stockholders or any adjournment thereof, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date which shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting, and no more than sixty (60) days prior to any other action.

If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice of the meeting is given or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held, and such date for any other purpose shall be the date on which the Board of Directors adopts the resolution relating thereto. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

SECTION 6. Quorum. The holders of a majority of the stock issued and outstanding present in person or represented by proxy shall be requisite and shall constitute a quorum at all meetings of the

stockholders for the transaction of business, except as otherwise provided by law, by the Restated Certificate of Incorporation or by these by-laws. If, however, such majority shall not be present or represented at any meeting of the stockholders, the

stockholders present in person or by proxy shall have power to adjourn the meeting from time to time without notice other than announcement at the meeting until the requisite amount of stock shall be represented. At such adjourned meeting at which the requisite amount of stock shall be represented, any business may be transacted which might have been transacted at the meeting as originally called.

SECTION 7. Voting. Each stockholder entitled to vote in accordance with the terms of the Restated Certificate of Incorporation and in accordance with the provisions of these by-laws shall be entitled to one vote, in person or by proxy, for each share of stock entitled to vote held by such stockholder, but no proxy shall be voted after three years from its date unless such proxy provides for a longer period. The vote for directors and, upon demand of any stockholder, the vote upon any question before the meeting shall be by ballot. All elections of directors shall be decided by plurality vote; all other questions shall be decided by a majority of the shares present in person or represented by proxy at the meeting of stockholders and entitled to vote on the subject matter, except as otherwise provided in the Restated Certificate of Incorporation or by law or regulation.

SECTION 8. Inspectors of Election. All elections of directors and all votes where a ballot is required shall be conducted by two inspectors of election who shall be appointed by the Board of Directors; but in the absence of such appointment by the Board of Directors, the Chairman of the meeting shall appoint such inspectors who shall not be directors or candidates for the office of director.

SECTION 9. Voting List. The Secretary shall prepare and make, at least ten days before every election of directors, a complete list of the stockholders entitled to vote, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in his name. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held. The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

SECTION 10. Stockholder Nominations of Directors. Only persons who are nominated in accordance with the following procedures shall be eligible for election as directors at a meeting of stockholders. Nominations of persons for election to the Board of Directors of the Corporation may be made at a meeting of stockholders by or at the direction of the Board of Directors, by any person appointed by the Board of Directors or by any stockholder of the Corporation entitled to vote for the election of directors at the meeting who complies with the notice procedures set forth in this Section 10. Such nominations, other than those made by or at the direction of the Board of Directors or by any person appointed by the Board of Directors, shall be made pursuant to timely notice in writing to the Secretary, Marsh & McLennan Companies, Inc. To be timely, a stockholder's notice shall be delivered to or mailed and received at the principal executive offices of the Corporation, in the case of an Annual Meeting of Stockholders, not less than 90 days prior to the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that in the event that the annual meeting is called for a date that is not within 30 days before or after such anniversary date, notice by the

Stockholder in order to be timely must be so received not later than the close of business on the 15th day following the day on which such notice of the date of the annual meeting was mailed or such public disclosure of the date of the annual meeting was made, whichever first occurs; and in the case of a special meeting of stockholders called for the purpose of electing directors, not later than the close of business on the 15 day following the day on which notice of the date of the special meeting was mailed or public disclosure of the date of the special meeting was made, whichever first occurs. Such stockholder's notice to the Secretary shall set forth (a) as to each person whom the stockholder proposes to nominate for election or re-election as a director, (i) the name, age, business address and residence address of the person, (ii) the principal occupation or employment of the person, (iii) the class and number of shares of capital stock of the Corporation which are beneficially owned by the person and (iv) any other information relating to the person that is required to be disclosed in solicitations for proxies for election of directors pursuant to Rule 14a under the Securities Exchange Act of 1934, as amended; and (b) as to the stockholder giving the notice (i) the name and record address of the stockholder and (ii) the class and number of shares of capital stock of the Corporation which are beneficially owned by the stockholder. The Corporation may require any proposed nominee to furnish such other information as may reasonably be required by the Corporation to determine the eligibility of such proposed nominee to serve as a director of the Corporation. No person shall be eligible for election as a director of the Corporation unless nominated in accordance with the procedures set forth herein.

The Chairman of the meeting shall, if the facts warrant, determine and declare to the meeting that a nomination was not made in accordance with the foregoing procedure, and if he should so determine, he shall so declare to the meeting and the defective nomination shall be disregarded.

SECTION 11. Advance Notice of Stockholder Proposed Business at Annual

Meetings. At an annual meeting of the stockholders, only such business shall be conducted as shall have been properly brought before the meeting. To be properly brought before an annual meeting, business must be specified in the notice of meeting (or any supplement thereto) given by or at the direction of the Board of Directors, otherwise properly brought before the meeting by or at the direction of the Board of Directors, or otherwise properly brought before the meeting by a stockholder. In addition to any other applicable requirements, for business to be properly brought before an annual meeting by a stockholder, the stockholder must have given timely notice thereof in writing to the Secretary, Marsh & McLennan Companies, Inc. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation, not less than 90 days prior to the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that in the event that the annual meeting is called for a date that is not within 30 days before or after such anniversary date, notice by the stockholder in order to be timely must be so received not later than the close of business on the 15th day following the day on which such notice of the date of the annual meeting was mailed or such public disclosure of the date of the annual meeting was made. A stockholder's notice to the Secretary shall set forth as to each matter the stockholder proposes to bring before the annual meeting (i) a brief description of the business desired to be brought before the annual meeting and the reasons for conducting such business at the annual meeting, (ii) the name and record address of the stockholder proposing such business, (iii) the class and number of shares of capital stock of the Corporation which are beneficially owned by the stockholder, and (iv) any material interest of the stockholder in such business.

Notwithstanding anything in these by-laws to the contrary, no business shall be conducted at the annual meeting except in accordance with the procedures set forth in this Section 11, provided, however, that nothing in this Section 11 shall be deemed to preclude discussion by any stockholder of any business properly brought before the annual meeting in accordance with said procedure.

The Chairman of an annual meeting shall, if the facts warrant, determine and declare to the meeting that business was not properly brought before the meeting in accordance with the provisions of this Section, and if he should so determine, he shall so declare to the meeting, and any such business not properly brought before the meeting shall not be transacted.

## ARTICLE III

### Directors

SECTION 1. Powers, Number, Tenure, Qualifications and Compensation. The business and affairs of the Corporation shall be managed by its Board of Directors which shall consist of the number of members set forth in Article FIFTH of the Restated Certificate of Incorporation, none of whom need be stockholders, and directors must retire at the annual meeting following attaining age 72, unless the person has been a non-executive director for less than 10 years, in which case they would retire at the annual meeting following the earlier of 10 years of service or attaining age 75. In addition to the powers and duties by these by-laws expressly conferred upon them, the Board of Directors may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Restated Certificate of Incorporation or by these by-laws directed or required to be exercised or done by the stockholders. The Board of Directors may provide for compensation of directors who are not otherwise compensated by the Corporation or any subsidiary thereof.

SECTION 2. Meetings and Notice. The Board shall, for the purposes of organization, the election and appointment of officers and the transaction of other business, hold a meeting as soon as convenient after the annual meeting of stockholders. Regular meetings of the directors may be held without notice at such places and times as shall be determined from time to time by resolution of the directors. Special meetings of the Board may be called by the Chairman of the Board or Lead Director, as the case may be, or, if the Chairman of the Board or Lead Director, as the case may be, is unable to act, by the Corporation's General Counsel or any member of the Executive Committee of the Board of Directors on at least twenty-four (24) hours notice to each director, personally or by mail, by telecopy, by e-mail or by telephone. Special meetings of the Board shall also be called in like manner on the written request of any three (3) directors delivered to the Corporation's Secretary. In the case of a meeting of the Board of Directors not attended by the Chairman of the Board or Lead Director, as the case may be, a Vice Chairman, determined in the order of their

election if two or more Vice Chairmen are present, shall call the meeting to order
and the first item of business shall be to appoint a director to preside at the meeting. Notice of a special meeting
of the Board may be waived by any director, either before or after the meeting, by written assent, by telecopy or
by e-mail; provided that attendance at the

| *EX-3* | *5th Page of 9* | TOC | 1st | Previous | Next | Bottom | Just 5th |

meeting by a director shall constitute waiver of such notice by such director. The attendance of a director at any meeting shall dispense with notice to him of the meeting. Members of the Board of Directors may participate in a meeting of the Board by means of conference telephone or similar communications equipment, by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this section shall constitute presence in person at such meeting.

SECTION 3. Offices, Books, Place of Meeting. The Board of Directors may have one or more offices and keep the books of the Corporation outside of Delaware, and may hold its meetings at such places as it may from time to time determine.

SECTION 4. Quorum. At all meetings of the Board of Directors one-third (1/3) of the total number of directors shall be necessary and sufficient to constitute a quorum for the transaction of business, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors, except as may be otherwise specifically provided by statute or by the Restated Certificate of Incorporation or by these by-laws.

SECTION 5. Informal Action. The Board of Directors shall, except as otherwise provided by law, have power to act in the following manner: A resolution in writing, signed by all of the members of the Board of Directors shall be deemed to be action by such Board to the effect therein expressed with the same force and effect as if the same had been duly passed at a duly convened meeting, and it shall be the duty of the Secretary of the Corporation to record any such resolution in the minute book of the Corporation, under its proper date.

## ARTICLE IV

### Officers

SECTION 1. Election. The Board of Directors shall elect officers of the Corporation, including a Chairman of the Board or a Lead Director, one or more Vice Presidents, a Secretary, a Treasurer and a Controller. The Board of Directors may also elect one or more Vice Chairmen.

SECTION 2. Term and Removal. Each officer of the Corporation designated in SECTION 1 of this Article IV shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal. Any officer may be removed at any time, with or without cause, by the Board of Directors. Any officer who may be elected or appointed by the Executive Committee may also be removed at any time, with or without cause by said Committee.

SECTION 3. Chairman of the Board/Lead Director. As the Board may determine from time to time, there shall be either a Chairman of the Board or a Lead Director. The Chairman of the Board or Lead Director may, but need not necessarily, also be the Chief Executive Officer of the Corporation. The Chairman of the Board or Lead Director, as the case may be, shall preside at all meetings of the stockholders and of the Board of Directors. At any meeting of the stockholders not attended by the Chairman of the Board or Lead Director, as the case may be, the Board shall appoint a director to preside at the meeting. The Chairman of the Board or Lead Director, as the case may be, shall review and recommend to the Board of Directors both short-term objectives and long-term planning for the business. The Chairman of the Board or Lead Director, as the case may be, shall also preside at meetings of any committee of which the Chairman of the Board or Lead Director, as the case may be, is a member which is not attended by the chairman of such committee. The Chairman of the Board or Lead Director, as the case may be, or an appointed delegate may take any action on behalf of the Corporation with respect to the shares owned by the Corporation in other corporations in such manner as they deem advisable unless otherwise directed by the Board of Directors. The Chairman of the Board or Lead Director, as the case may be, shall have full authority to take other action on behalf of the Corporation in respect of shares of stock in other corporations owned by the Corporation, directly or indirectly, including the obtaining of information and reports.

SECTION 4. Vice Chairman. A Vice Chairman, if any, shall, subject to the control of the Board of Directors and of the committees exercising functions of the Board of Directors, perform such duties as may from time to time be assigned to the Vice Chairman by the Chairman or Lead Director.

SECTION 5. Vice Presidents. A Vice President shall have such powers, duties,

supplementary titles and other designations as the Board of Directors may from time to time determine.

SECTION 6.Secretary. The Secretary shall attend all meetings of the stockholders and the Board of Directors. The Secretary shall, at the invitation of the chair thereof, attend meetings of the committees elected by the Board or established by these by-laws. The Secretary shall record all votes and minutes of all proceedings which the Secretary attends and receive and

maintain custody of all votes and minutes of all such proceedings. Votes and minutes of meetings of each committee shall be placed in the custody of the Secretary or as otherwise determined by the committee. The Secretary shall give or cause to be given notice of meetings of the stockholders, Board of Directors, and committees of the Board of Directors as provided by these By-Laws, and shall have such other powers and duties as may be prescribed by appropriate authority. The Secretary shall keep in safe custody the seal of the Corporation and shall affix the seal to any instrument requiring the same. The Assistant Secretaries shall have such powers and perform such duties as may be prescribed by appropriate authority.

SECTION 7.Treasurer. The Treasurer shall have such powers and perform such duties as are usually incident to the office of Treasurer or which may be assigned to the Treasurer by the Board of Directors or other appropriate authority. The Assistant Treasurers shall have such powers and perform such duties as may be prescribed by the chief financial officer or the Treasurer.

SECTION 8.Controller. The Controller shall be the chief accounting officer of the Corporation. The Controller shall keep or cause to be kept all books of account and accounting records of the Corporation and shall render to the Chairman, the chief financial officer and the Board of Directors whenever they may require it, a report of the financial condition of the Corporation. The Controller shall have such other powers and duties as shall be assigned to him by appropriate authority. The Assistant Controllers shall have such powers and perform such duties as may be prescribed by the chief financial officer or the Controller.

SECTION 9.Bond. The Board of Directors may, or the Chairman may, require any officers, agents or employees of the Corporation to furnish bonds conditioned on the faithful performance of their respective duties with a surety company satisfactory to the Board of Directors or the Chairman as surety. The expenses of such bond shall be paid by the Corporation.

## ARTICLE V

### Committees

SECTION 1.Executive Committee. An Executive Committee, composed of the Chairman of the Board or Lead Director, as the case may be, and such other directors as the Board of Directors may determine from time to time shall be elected by the Board of Directors. Except as provided hereinafter or in resolutions of the Board of Directors, the Executive Committee shall have, and may exercise when the Board of Directors is not in session, all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation and may authorize the seal of the Corporation to be affixed to all papers which may require it. The Executive Committee shall not, however, have power or authority in reference to (a) approving or adopting, or recommending to the stockholders, any action or matter expressly required by the provisions of the General Corporation Law of Delaware to be submitted to stockholders for approval, (b) adopting, amending or repealing any by-laws of the Corporation, (c) electing or appointing the Chairman of the Board or Lead Director, as the case may be, of the Corporation, or (d) declaring a dividend.

SECTION 2.Compensation Committee. A Compensation Committee, including a chair, having such number of directors as the Board of Directors shall determine from time to time, shall be elected by the Board of Directors. The Compensation Committee shall have such duties as may be set forth in the Corporation's Compensation Committee charter as it may exist from time to time, or as otherwise provided by the Board of Directors.

SECTION 3.Audit Committee. An Audit Committee, including a chair, having such number of directors as the Board of Directors may determine from time to time, shall be elected by the Board of Directors. The Audit Committee shall have such duties as may be set forth in the Corporation's Audit Committee charter as it may exist from time to time, or as otherwise provided by the Board of Directors.

SECTION 4.Directors and Governance Committee. A Directors and Governance

Committee, including a chair, having such number of directors as the Board of Directors may determine from time to time, shall be elected by the Board of Directors. The Directors and Governance Committee shall have such duties as

may be set forth in the Corporation's Directors and Governance Committee charter as it may exist from time to time, or as otherwise provided by the Board of Directors.

SECTION 5.Reports. The Executive Committee shall report to each regular meeting and, if directed, to each special meeting of the Board of Directors all action taken by such committee subsequent to the date of its last report, and other committees shall report to the Board of Directors on a regular basis.

SECTION 6.Other Committees. The Board of Directors may appoint such other committee or committees as it deems desirable.

SECTION 7.Election and Term. The Chair and each member of every committee shall be a member of and, except as provided in Section 8 of this Article V, elected by the Board of Directors and shall serve until such person shall cease to be a member of the Board of Directors or such person's membership on the committee shall be terminated by the Board.

SECTION 8.Meetings, Quorum and Notice. The Chair of any committee shall be the presiding officer thereof. Any committee may meet at such time or times on notice to all the members thereof by the Chairman of this Corporation, by the committee chair or by a majority of the members or, when instructed to do so by any of the foregoing, by the Secretary of the Corporation or the secretary of such committee, at such place or places as such notice may specify. At least twenty-four (24) hours' notice of the meeting shall be given but such notice may be waived. Such notice may be given by mail, by telecopy, by e-mail, by telephone or personally. Each committee shall cause minutes to be kept of its meetings which record all actions taken. Such minutes shall be placed in the custody of the Secretary of the Corporation or as otherwise determined by the committee. Any committee may, except as otherwise provided by law, act in its discretion by a resolution or resolutions in writing signed by all the members of such committee with the same force and effect as if duly passed by a duly convened meeting. Any such resolution or resolutions shall be recorded with the minutes of the committee under the proper date thereof. Members of any committee may also participate in a meeting of such committee by means of conference telephone or similar communications equipment, by means of which all persons participating in the meeting can hear each other and participation in the meeting pursuant to this provision shall constitute presence in person at such meeting. A majority of the members of each committee shall constitute a quorum. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board of Directors who is qualified to serve under the rules of the New York Stock Exchange to act at the meeting in the place of any such absent or disqualified member. The vote of the majority of the members present at a committee meeting at which a quorum is present shall be the act of the committee.

## ARTICLE VI

### Indemnification

SECTION 1. Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter, a *"proceeding"*), by reason of the fact that, on or after May 21, 1987, he or she is serving or had served as a director, officer or employee of the Corporation or, while serving as such director, officer or employee, is serving or had served at the request of the Corporation as a director, officer, employee or agent of, or in any other capacity with respect to, another corporation or a partnership, joint venture, trust or other entity or enterprise, including service with respect to employee benefit plans (hereinafter, an *"indemnitee"*), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer or employee of the Corporation, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by Delaware law, as the same exists or may hereafter be changed or amended (but, in the case of any such change or amendment, only to the extent that such change or amendment permits the Corporation to provide broader indemnification rights than permitted prior thereto), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts to be paid in settlement) reasonably incurred or suffered by an indemnitee in connection therewith and such indemnification shall continue as to an indemnitee who has ceased to be a director, officer or employee of the Corporation and

shall inure to the benefit of the indemnitee's heirs, executors and administrators; provided, however, that except as provided in Section 3 of this Article with respect to proceedings seeking to enforce rights to indemnification, the Corporation shall indemnify an indemnitee in connection with a proceeding (or part thereof) initiated by the indemnitee only if such proceeding (or part

thereof) was authorized by the board of directors of the Corporation. The right to indemnification conferred in this Article shall be a contract right.

SECTION 2. <u>Advancement of Expenses</u>. An indemnitee who is a director or officer of the Corporation, and any other indemnitee to the extent authorized from time to time by the board of directors of the Corporation, shall have the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition (hereinafter, an *"advancement of expenses"*); <u>provided</u>, <u>however</u>, that, if the Delaware General Corporation Law requires, an advancement of expenses incurred by an indemnitee in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such indemnitee, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter, an *"undertaking"*), by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter, a *"final adjudication"*) that such indemnitee is not entitled to be indemnified for such expenses under this Article or otherwise.

SECTION 3. <u>Right of Indemnitee to Bring Suit</u>. If a claim under Section 1 or Section 2 of this Article is not paid in full by the Corporation within sixty days in the case of Section 1 and twenty days in the case of Section 2 after a written claim has been received by the Corporation, the indemnitee may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to terms of an undertaking, the indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit. In (i) any suit brought by the indemnitee to enforce a right to indemnification hereunder (other than a suit brought by the indemnitee to enforce a right to an advancement of expenses), it shall be a defense that, and (ii) any suit by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking the Corporation shall be entitled to recover such expenses upon a final adjudication that, the indemnitee has not met the applicable standard of conduct set forth in the Delaware General Corporation Law. Neither the failure of the Corporation (including its board of directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the indemnitee is proper in the circumstances because the indemnitee has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the Corporation (including its board of directors, independent legal counsel, or its stockholders) that the indemnitee has not met such applicable standard of conduct, shall create a presumption that the indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the indemnitee, be a defense to the action. In any suit brought by the indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is not entitled to be indemnified, or to such advancement of expenses, under this Article or otherwise shall be on the Corporation.

SECTION 4. <u>Indemnification of Agents of the Corporation</u>. The Corporation may, to the extent authorized from time to time by its board of directors, grant rights to indemnification, and to be paid by the Corporation the expenses incurred in defending any proceeding in advance of its final disposition, to any agent of the Corporation to the fullest extent of the provisions of this Article with respect to the indemnification of directors, officers and employees of the Corporation and advancement of expenses of directors and officers of the Corporation.

SECTION 5. <u>Non-Exclusivity of Rights</u>. The right to indemnification and to the advancement of expenses conferred in this Article shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the Corporation's Restated <u>Certificate of Incorporation</u>, these <u>by-laws</u>, any agreement, vote of stockholders or disinterested directors, or otherwise.

SECTION 6. <u>Insurance</u>. The Corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

SECTION 7. <u>Survival of Prior Indemnification Provisions; Effect of Subsequent Change on Existing Rights</u>. Nothing contained in this Article shall be construed as altering or eliminating the rights to indemnification existing, or based upon service by an indemnitee, prior to May 21, 1987. Any repeal or modification of this Article shall not adversely affect any right or protection of a director, officer or employee of the Corporation existing at the time of such repeal or modification.

| *EX-3* | *8th Page of 9* | TOC | 1st | Previous | Next | Bottom | Just 8th |

### ARTICLE VII

#### Checks, Contracts, Other Instruments

SECTION 1. Documents, Instruments Not Requiring Seal. All checks, notes, drafts, acceptances, bills of exchange, orders for the payment of money, and all written contracts and instruments of every kind which do not require a seal shall be signed by such officer or officers, or person or persons as these by-laws, or the Board of Directors or Executive Committee by resolution, may from time to time prescribe.

SECTION 2. Documents, Instruments Requiring Seal. All bonds, deeds, mortgages, leases, written contracts and instruments of every kind which require the corporate seal of the Corporation to be affixed thereto, shall be signed and attested by such officer or officers as these by-laws, or the Board of Directors or Executive Committee, by resolution, may from time to time prescribe.

### ARTICLE VIII

#### Capital Stock

SECTION 1. Stock Certificates. The certificates for shares of the capital stock of the Corporation shall be in such form, not inconsistent with the Restated Certificate of Incorporation, as shall be approved by the Board of Directors. Each certificate shall be signed by the Chairman of the Board of Directors or Lead Director, as the case may be, or a Vice President and also by the Secretary, an Assistant Secretary, the Treasurer or an Assistant Treasurer, provided, however, that any such signature of an officer of the Corporation or of the Transfer Agent, Assistant Transfer Agent, Registrar or Assistant Registrar, or any of them, may be a facsimile. In case any officer or officers who shall have signed, or whose facsimile signature or signatures shall have been used on any such certificate or certificates shall cease to be such officer or officers of the Corporation, whether because of death, resignation or otherwise before such certificate or certificates shall have been delivered by the Corporation, such certificate or certificates may nevertheless be issued by the Corporation and be used and delivered as though the officer or officers who signed the said certificate or certificates or whose facsimile signature or signatures shall have been used thereon had not ceased to be said officer or officers of the Corporation. All certificates shall be consecutively numbered, shall bear the corporate seal and the names and addresses of all persons owning shares of capital stock of the Corporation with the number of shares owned by each; and, the date or dates of issue of the shares of stock held by each shall be entered in books kept for that purpose by the proper officers or agents of the Corporation.

SECTION 2. Recognition of Holders of Record. The Corporation shall be entitled to treat the holder of record of any share or shares of stock as the holder in fact thereof, and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it has actual or other notice thereof, save as expressly provided by the laws of the State of Delaware.

SECTION 3. Lost Certificates. Except in cases of lost or destroyed certificates, and in that case only after conforming to the requirements hereinafter provided, no new certificates shall be issued until the former certificate for the shares represented thereby shall have been surrendered and cancelled. The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate or certificates to be lost or destroyed; and the Board of Directors may, in its discretion and as a condition precedent to the issuance of any such new certificate or certificates, require (i) that the owner of such lost or destroyed certificate or certificates, or his legal representative give the Corporation and its transfer agent or agents, registrar or registrars a bond in such form and amount as the Board of Directors may direct as indemnity against any claim that may be made against the Corporation and its transfer agent or agents, registrar or registrars, or (ii) that the person requesting such new certificate or certificates obtain a final order or decree of a court of competent jurisdiction as to his right to receive such new certificate or certificates.

SECTION 4. Transfer of Shares. Shares of stock shall be transferred on the books of the Corporation by the holder thereof or by his attorney thereunto duly authorized upon the surrender and

cancellation of certificates for a like number of shares.

SECTION 5. Regulations Governing Transfer of Shares. The Board of Directors may make such regulations as it may deem expedient concerning the issue, transfer and registration of stock.

SECTION 6. Appointment of Transfer Agent, Registrar. The Board may appoint a Transfer Agent or Transfer Agents and Registrar or Registrars for transfers and may require all certificates to bear the signature of either or both.

## ARTICLE IX

### Miscellaneous

SECTION 1. Inspection of Books. The Board of Directors or the Executive Committee shall determine from time to time whether and, if allowed, when and under what conditions and regulations the accounts and books of the Corporation (except such as may by statute be specifically open to inspection), or any of them shall be open to the inspection of the stockholders, and the stockholders' rights in this respect are and shall be restricted and limited accordingly.

SECTION 2. Corporate Seal. The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization, and the words *"Corporate Seal, Delaware"*.

SECTION 3. Fiscal Year. The fiscal year shall begin on the first day of January of each year.

SECTION 4. Waiver of Notice. Whenever by statute, the provisions of the Restated Certificate of Incorporation, or these by-laws, the stockholders, the Board of Directors or any committee established by the Board of Directors in accordance with these by-laws are authorized to take any action after notice, such notice may be waived, in writing, before or after the holding of the meeting at which such action is to be taken, by the person or persons entitled to such notice or, in the case of a stockholder, by his attorney thereunto authorized.

## ARTICLE X

### Amendments

SECTION 1. By Stockholders. These by-laws, or any of them, may be amended, altered, changed, added to or repealed at any regular or special meeting of the stockholders, by the affirmative vote of a majority of the shares of stock then issued and outstanding.

SECTION 2. By the Board of Directors. The Board of Directors, by affirmative vote of a majority of its members, may, at any regular or special meeting, amend, alter, change, add to or repeal these by-laws, or any of them, but any by-laws made by the Directors may be amended, altered, changed, added to or repealed by the stockholders.

## Dates Referenced Herein *and* Documents Incorporated By Reference

|  |  | Referenced-On Page |  |  |
| --- | --- | --- | --- | --- |
| *This 8-K Filing* | *Date* | *First* | *Last* | *Other Filings* |
|  | ▼ |  |  |  |
| Filed On / Filed As Of / For The Period Ended | 3/16/05<br>3/21/05 | 1 |  | 4<br>4 |

Top                                                                                                    List All Filings

Filing Submission  -  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

*Copyright © 2009 Fran Finnegan & Company. All Rights Reserved.*
*About – Privacy – Redactions – Help — Wed, 21 Jan 17:19:35.2 GMT*



**SYSTEMS**

**Epiq eDiscovery Solutions, Inc.**
90 Park Avenue, 8th floor
New York, NY 10017

| | |
|---|---|
| Customer No. | 16570 |
| Invoice No. | 37252 |
| Invoice Date | 12/31/08 |
| Due Date | 01/30/09 |
| Page | 1 |

**Bill To:**

Christopher Chalavoutis
26 Ducharme Lane
Greenlawn, NY 11740

**Remit To:**

Epiq eDiscovery Solutions, Inc.
Dept 0250
P.O. Box 120250
Dallas, TX 75312-0250

**Billing Questions**
Phone: (212) 225-9200
Fax: (212) 225-9201

| DESCRIPTION | UNITS | RATE | AMOUNT |
|---|---|---|---|
| Re: Schlam Chalavoutis | | | |
| Services for the month of: December 2008 | | | |
| | | | |
| Special Tasks - Client Request | 0.5 | 200.00 | 100.00 |
| | | | |
| Hosting Services: December 2008 | | | |
| | | | |
| User Fees | 33 | 35.00 | 1,155.00* |
| Data Storage | 180.57 | 40.00 | 7,222.80 |
| Application Support (Monday-Friday 8 AM EST to 8 PM EST) | 0.25 | 150.00 | 37.50 |
| Binding | 1 | 6.00 | 6.00 |

For wire & ACH payments:
Bank name - SIL VLY BK SJ
Routing # - 121140399
For credit of Epiq eDiscovery Solutions, Inc.
Account # - 3300474842
Remember to include Invoice #'s in the memo

| | | | | | Sales Tax | | 96.79 |
|---|---|---|---|---|---|---|---|
| **Account Balance** | | | | | | | |
| Balance | 0-10 Days | 11-30 Days | 31-90 Days | 90+ Days | **Invoice Total:** | | **8,618.09** |
| 217,596.26 | 8,618.09 | 0.00 | 18,200.23 | 190,777.94 | | | |

Taxable charges indicated by asterisk(*)

**epiq**

PLEASE PAY FROM THIS INVOICE        TERMS NET 30 DAYS

**Customer Copy**



**Epiq eDiscovery Solutions, Inc.**
90 Park Avenue, 8th floor
New York, NY 10017

| | |
|---|---|
| Customer No. | 16570 |
| Invoice No. | 37252 |
| Invoice Date | 12/31/08 |
| Due Date | 01/30/09 |
| Page | 1 |

**Bill To:**

Christopher Chalavoulis
26 Ducharme Lane
Greenlawn, NY  11740

**Remit To:**

Epiq eDiscovery Solutions, Inc.
Dept 0250
P.O. Box 120250
Dallas, TX 75312-0250

**Billing Questions**
Phone: (212) 225-9200
Fax: (212) 225-9201

| DESCRIPTION | UNITS | RATE | AMOUNT |
|---|---|---|---|
| Re: Schlam Chalavoulis | | | |
| Services for the month of: December 2008 | | | |
| | | | |
| Special Tasks - Client Request | 0.5 | 200.00 | 100.00 |
| | | | |
| Hosting Services: December 2008 | | | |
| | | | |
| User Fees | 33 | 35.00 | 1,155.00* |
| Data Storage | 180.57 | 40.00 | 7,222.80 |
| Application Support (Monday-Friday 8 AM EST to 8 PM EST) | 0.25 | 150.00 | 37.50 |
| Binding | 1 | 6.00 | 6.00 |

For wire & ACH payments:
Bank name  -  SIL VLY BK SJ
Routing #  -  121140399
For credit of Epiq eDiscovery Solutions, Inc.
Account #  -  3300474842
Remember to include Invoice #'s in the memo

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | Sales Tax | | 96.79 |

| | Account Balance | | | | | |
|---|---|---|---|---|---|---|
| **Balance** | **0-10 Days** | **11-30 Days** | **31-90 Days** | **90+ Days** | **Invoice Total:** | **8,618.09** |
| 217,595.26 | 8,618.09 | 0.00 | 18,200.23 | 190,777.94 | | |

Taxable charges indicated by asterisk(*)

PLEASE PAY FROM THIS INVOICE          TERMS NET 30 DAYS



Customer Copy

# Exhibit 2

DAVIS & GILBERT LLP
Paul F. Corcoran, Esq.
Allie Lin, Esq.
1740 Broadway
New York, New York 10019
(212) 468-4800
pcorcoran@dglaw.com
alin@dglaw.com

RECEIVED
JUN 16 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Attorneys for Plaintiffs Kroll Inc.
and Kroll Associates, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KROLL INC. and KROLL ASSOCIATES, INC.,

              Plaintiffs,

    -against-

FRANK L. HOLDER, FERRELL LAW, P.A., and
FERRELL INVESTIGATIONS & SECURITY, INC.,

              Defendants.

06 Civ. 04657 (RJH)

**ECF CASE**

**AMENDED COMPLAINT**

Plaintiffs Kroll Inc. and Kroll Associates, Inc., by their attorneys Davis & Gilbert
LLP, as and for their Amended Complaint against defendants Frank L. Holder, Ferrell Law,
P.A., and Ferrell Investigations & Security, Inc. allege as follows:

## THE PARTIES

1.     Plaintiff Kroll Inc. ("Kroll") is a corporation formed under the laws of
Delaware with its principal place of business in the State of New York and is the parent
corporation of Kroll Associates, Inc. Plaintiff Kroll Associates, Inc. ("Kroll Associates") is a
corporation formed under the laws of Delaware and is engaged in the business of private
investigations, executive protection, corporate investigation, risk and crisis management,
forensic auditing and business intelligence.

2.      Upon information and belief, defendant Frank L. Holder ("Holder") is currently a resident of the State of Florida.

3.      Defendant Ferrell Law, P.A. ("Ferrell Law") is a professional association formed under the laws of Florida with its principal place of business at 201 South Biscayne Boulevard, Miami, Florida, specializing in litigation, private wealth, investigations and security. Ferrell Law was previously known as Ferrell Schultz Cartel & Fertel, P.A.

4.      Defendant Ferrell Investigations & Security, Inc. ("Ferrell Investigations") is a corporation formed under the laws of Florida with its principal place of business at 201 South Biscayne Boulevard, Miami, Florida. Ferrell Investigations was previously known as Ferrell Schultz Investigations and Security, Inc.   Upon information and belief, Ferrell Investigations is an affiliate of Ferrell Law.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, excluding interest and costs.

6.      Venue is proper in this District under 28 U.S.C. § 1391.

### ALLEGATIONS COMMON TO ALL CLAIMS

7.      On or about March 1, 2000, Holder entered into an employment agreement with Kroll Associates, whereby Kroll Associates agreed to employ Holder as Regional Head of Latin America and Holder agreed to devote his best efforts to promote the interests of Kroll Associates (the "2000 Employment Agreement").   Pursuant to the 2000 Employment Agreement, Holder agreed to refrain from soliciting any client of Kroll Associates during the three-year term of the agreement and for a two-year period following termination.

2

8.    On or about June 1, 2003, Holder entered into a second employment agreement with Kroll Associates, whereby Kroll Associates agreed to employ Holder as Senior Managing Director (the "2003 Employment Agreement"). Pursuant to the 2003 Employment Agreement, Holder again agreed to refrain from competitive activity during the one-year term of the agreement and for a one-year period following termination of the agreement.

9.    On or about July 7, 2004, Holder entered into an employment agreement with Marsh USA Inc. ("Marsh") and Kroll, to be effective at the time of the merger by and among Marsh & McLennan Companies, Inc., Kroll and King Merger Corp. (the "2004 Employment Agreement"). Pursuant to the 2004 Employment Agreement, Holder was prohibited from (a) competing with Kroll, Marsh and their affiliated entities during the term of the agreement and (b) soliciting Kroll clients for a one-year period following termination of his employment. Section 7(b) of the 2004 Employment Agreement provided, in relevant part, as follows, regarding the solicitation of clients:

> [D]uring the Executive's employment with the Company and for 12 months following the termination of the Executive's employment with the Company for any reason during the Employment Period . . . (the "Restricted Period"), the Executive will not, without the written consent of Marsh, directly or indirectly: (i) attempt in any manner to persuade any client of [Kroll, Marsh and/or any of their subsidiaries] or any client of [Kroll, Marsh and/or any of their subsidiaries] during the 12-month period preceding the termination of the Executive's employment to cease to engage in business or to reduce the amount of business which such client has customarily done or contemplates doing with such entities, whether or not the relationship between [Kroll, Marsh and/or any of their subsidiaries] and such client was originally established, in whole or in part, through the Executive's efforts; or (ii) solicit business of any client of [Kroll, Marsh and/or any of their subsidiaries] unless such solicitations are rendered as an employee or consultant of [Kroll, Marsh and/or any of their subsidiaries] on behalf of [Kroll, Marsh and/or any of their subsidiaries].

3

Section 7(c) of the 2004 Employment Agreement prohibited Holder from competing against

Kroll and/or Marsh:

> During the Restricted Period, the Executive shall not, without the prior written consent of Marsh senior management, directly or indirectly, (i) engage on his own behalf in Kroll's Business (as defined below) or (ii) own any interest in or engage in or perform any service for any person, firm, corporation or other entity, either as partner, owner, employee, consultant, agent, officer, director, or shareholder that (A) derives a meaningful portion of its revenues ·from Kroll's Business or (B) is a competitor in Kroll's Business. "Kroll's Business" shall mean any business in which [Kroll, Marsh and/or any of their subsidiaries] is engaged.

10.     As compensation and in consideration of Holder's performance under the

2004 Employment Agreement, Kroll and Marsh agreed to pay Holder a bonus of $200,000, a

base salary at an annual rate of not less than $400,000, a discretionary annual bonus, and a

retention award of $400,000 in Marsh & McLennan Companies, Inc. common stock, together

with an incentive compensation package.

11.     On or about July 7, 2004, Kroll, Marsh and Holder entered into an

amendment (the "Amendment") to the 2004 Employment Agreement, whereby Section 7(c) of

the 2004 Employment Agreement was amended by adding the following sentence:

> Notwithstanding the foregoing, in the event of the Executive's resignation without Good Reason [as such term is defined in the 2004 Employment Agreement] during the Employment Period, the provisions of this Section 7(c) shall not apply to the Executive unless the Company, in its sole discretion, elects to pay the Executive an amount equal to the Annual Base Salary, in which case: (i) the provisions of this Section 7(c) shall survive in their entirety and (ii) the term "Restricted Period" as used in this Section 7(c) shall mean the one-year period following such resignation without Good Reason.

4

12.     On or about December 20, 2004, Holder submitted a letter of resignation which was to be effective January 7, 2005. Pursuant to the parties' agreement, Holder continued as an employee of Kroll through January 31, 2005.

13.     On or about January 27, 2005, Kroll notified Holder that Kroll had elected to exercise its option under the Amendment to the 2004 Employment Agreement to continue paying Holder his annual base salary of $400,000. Thus, Section 7(c) of the Employment Agreement remained in effect, prohibiting Holder from competing with Kroll and/or Marsh for one year following the effective date of his resignation.

14.     On or about January 28, 2005, Kroll sent a letter to Holder outlining the terms of his departure from the company, and designating January 31, 2005 as the last day of his employment with Kroll (the "January 28, 2005 Letter Agreement"). Pursuant to this letter, Kroll agreed to pay Holder a lump sum bonus payment in the amount of $320,000, together with four payments of $100,000 each during the one year non-compete period. Holder acknowledged and agreed to the terms of this letter on or about February 10, 2005.

15.     On or about February 1, 2005, Holder entered into a consulting agreement with Kroll Associates, whereby Holder agreed to provide consulting services to Kroll Associates in connection with projects for Kroll Associates client Brazil Telecom ("Brazil Telecom") and another unrelated client (the "Consulting Agreement"). Pursuant to the Consulting Agreement, Holder expressly reaffirmed and acknowledged his ongoing obligations to Kroll arising out of the non-competition and non-solicitation provisions contained in Section 7 of the 2004 Employment Agreement and the Amendment thereto. In addition, the Consulting Agreement expressly prohibited Holder from engaging in any work that would constitute a conflict of interest. Specifically, under Paragraph 2 of the Consulting Agreement, Holder agreed not to

5

engage in work for any business, firm, company or entity that would constitute a conflict of interest with his work for Kroll Associates. Holder also agreed to notify Kroll Associates within 24 hours of any potential conflicts of interest arising during his retention by Kroll Associates. In consideration of Holder's performance under the Consulting Agreement, Kroll Associates agreed to pay Holder at an hourly rate of $200.

16.     Brazil Telecom is a customer of Kroll for whom Holder, in his capacity as an employee and consultant of Kroll, performed services pursuant to the 2000 Employment Agreement, the 2003 Employment Agreement, the 2004 Employment Agreement and the Amendment thereto, and the Consulting Agreement.

17.     Upon information and belief, beginning in 2005, Holder entered into contracts with Brazil Telecom on his own behalf under which he agreed to perform investigative services for Brazil Telecom, in violation of 2004 Employment Agreement and the Amendment thereto and the Consulting Agreement.

18.     Upon information and belief, Holder was hired by Brazil Telecom to conduct investigative services.

19.     Upon information and belief, through September 2005, Holder was paid in excess of $800,000 by Brazil Telecom for the consulting services he allegedly provided.

20.     Holder never informed Kroll of the contracts that he had with Brazil Telecom or the compensation received from that business arrangement.

21.     In addition, upon information and belief, notwithstanding his contractual commitments to Kroll, in January 2005, Holder joined Ferrell Investigations, an affiliate of Ferrell Law, and was appointed President of Ferrell Investigations. Upon information and belief, Holder was responsible for directing complex large-scale investigations, supporting litigation

6

and arbitration matters, and conducting crisis management, business continuity and security consulting assignments throughout the United States and Latin America on behalf of Ferrell Law and Ferrell Investigations (collectively, "Ferrell").

22.     Upon information and belief, his activities with Ferrell were violative of the restrictive covenants contained in the 2004 Employment Agreement and Amendment thereto, the January 28, 2005 Letter Agreement and the Consulting Agreement and in direct competition with Kroll Associates.

23.     On or about March 11, 2005, Kroll notified Ferrell that Holder's employment and activities with Ferrell violated of Holder's restrictive covenant obligations and fiduciary duties to Kroll. Kroll requested that Ferrell cease and desist from employing or maintaining any business relationship with Holder in violation of his commitments to Kroll.

24.     Upon information and belief, after receiving notice from Kroll, Ferrell continued to employ Holder and use his services, and induced and provided substantial assistance to Holder to violate his restrictive covenant obligations.

25.     Finally, by his own public admissions, Holder generated as much as $6,000,000 in fees in 2005 for his services. Upon information and belief, most if not all such fees were obtained in violation of Holder's existing agreements with Kroll.

**FIRST CAUSE OF ACTION**
**AS TO DEFENDANT HOLDER**
(Breach of Contract)

26.     Plaintiffs repeat and reallege paragraphs 1 through 25 as if set forth fully herein.

27.     On or about July 7, 2004, Kroll and Holder entered into and fully executed a written employment agreement and amendment thereto, whereby Holder agreed to refrain

7

during the term of his employment and for a 12-month period following the termination of his employment from, among other things, (a) soliciting Kroll clients and (b) engaging on his own behalf in any business in which Kroll or any of its subsidiaries is engaged.

        28.    The 2004 Employment Agreement, as amended, is a valid and enforceable agreement between Kroll and Holder.

        29.    Kroll has performed all of its obligations under the 2004 Employment Agreement and the Amendment thereto.

        30.    On or about January 28, 2005, Kroll and Holder entered into and fully executed a letter agreement setting forth the terms of Holder's compensation upon his termination. The January 28, 2005 Letter Agreement expressly referenced the Amendment to the 2004 Employment Agreement.

        31.    The January 28, 2005 Letter Agreement is a valid and enforceable agreement between Kroll and Holder.

        32.    Kroll has performed all of its obligations under the January 28, 2005 Letter Agreement.

        33.    On or about February 1, 2005, Kroll Associates and Holder entered into and fully executed a written consulting agreement whereby Holder agreed to refrain from, among other things, engaging in work that would constitute a conflict of interest with Holder's work for Kroll Associates, including the provision of services to Brazil Telecom. The Consulting Agreement also expressly reaffirmed and incorporated by reference the non-competition and non-solicitation obligations of the 2004 Employment Agreement and the Amendment thereto.

        34.    The Consulting Agreement is a valid and enforceable agreement between Kroll Associates and Holder.

8

35.     Kroll Associates has performed all of its obligations under the Consulting Agreement.

36.     Upon information and belief, Holder has materially breached the 2004 Employment Agreement, the January 28, 2005 Letter Agreement, and the Consulting Agreement by performing investigative services for individuals and entities including, but not limited to, Brazil Telecom.  These activities constitute breaches of the terms and provisions of the fully executed 2004 Employment Agreement and Amendment thereto, the fully executed January 28, 2005 Letter Agreement and the fully executed Consulting Agreement.

37.     As a result of Holder's breaches of the 2004 Employment Agreement, the January 28, 2005 Letter Agreement and the Consulting Agreement, Plaintiffs have sustained damages in an amount to be determined at trial, but in any event, not less than $920,000.

### SECOND CAUSE OF ACTION
### AS TO DEFENDANT HOLDER
(Breach of Contract)

38.     Plaintiffs repeat and reallege paragraphs 1 through 37 as if set forth fully herein.

39.     Upon information and belief, in January 2005, Holder joined Ferrell Investigations, an affiliate of Ferrell Law, and was appointed President of Ferrell Investigations. Upon information and belief, Holder was responsible for directing complex large-scale investigations, supporting litigation and arbitration matters, and conducting crisis management, business continuity and security consulting assignments throughout the United States and Latin America on behalf of Ferrell Law and Ferrell Investigations.

40.     Upon information and belief, Holder materially breached his obligations to Plaintiffs by joining Ferrell Investigations and engaging in investigative services on behalf of

9

Ferrell. Holder's activities with Ferrell constitute competition with Plaintiffs, in violation of the terms and provisions of the fully executed 2004 Employment Agreement and Amendment thereto, the fully executed January 28, 2005 Letter Agreement and the fully executed Consulting Agreement.

41.     As a result of Holder's breaches of the 2004 Employment Agreement, the January 28, 2005 Letter Agreement and the Consulting Agreement through his activity with Ferrell, Plaintiffs have sustained damages in an amount to be determined at trial, but in any event, not less than $920,000.

THIRD CAUSE OF ACTION
AS TO DEFENDANT HOLDER
(Breach of Fiduciary Duty)

42.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

43.     As an employee and consultant of Kroll, Holder owed Kroll the fiduciary duty to act at all times in the utmost good faith and in Kroll's best interests.

44.     Upon information and belief, beginning in 2005, while Holder was still employed by and receiving a salary from Kroll and continuing during the period in which Holder was performing consulting services for Kroll, Holder breached his common law fiduciary duties to Kroll by: (a) soliciting business from individuals and entities including, but not limited to, Brazil Telecom on his own behalf; (b) actively performing services for individuals and entities including, but not limited to, Brazil Telecom while engaged by Kroll as an employee and consultant; (c) using Kroll's offices and equipment to perform services for individuals and entities including, but not limited to, Brazil Telecom; and (d) joining the firm of Ferrell

10

Investigations and actively performing investigative services on behalf of Ferrell in direct competition with Kroll Associates while engaged by Kroll as an employee and consultant.

        45.    As a result of Holder's breach of his fiduciary duties, Plaintiffs suffered, and will continue to suffer, irreparable injury in addition to monetary damages.

        46.    In addition to any other damages, Holder has forfeited any and all compensation he was paid by Plaintiffs during the periods during which he was acting in breach of his fiduciary duties.

FOURTH CAUSE OF ACTION
AS TO DEFENDANT HOLDER
(Rescission Based on Fraud)
(brought in the alternative to Plaintiffs' Claim for Breach of Contract)

        47.    Plaintiffs repeat and reallege paragraphs 1 through 456 as if set forth fully herein.

        48.    Plaintiffs paid good and valuable consideration to Holder pursuant to the 2004 Employment Agreement, the January 28, 2005 Letter Agreement and the Consulting Agreement.

        49.    Holder accepted consideration of in excess of $920,000 as compensation for the performance of services under the 2004 Employment Agreement, the January 28, 2005 Letter Agreement and the Consulting Agreement.

        50.    In exchange for this consideration, Holder represented that he would not compete with Kroll, would not solicit Kroll's clients, and would devote his best efforts to promote the interests of Kroll.

        51.    Upon information and belief, at the time Holder accepted the consideration, acknowledged and agreed to the terms of his departure from Kroll set forth in the

11

January 28, 2005 Letter Agreement, and entered into the Consulting Agreement, Holder (a) was engaged in the performance of services for individuals and entities including, but not limited to, Kroll client Brazil Telecom; and (b) had joined the firm of Ferrell Investigations and actively performed investigative services on behalf of Ferrell in contravention of the 2004 Employment Agreement and the Amendment thereto, the January 28, 2005 Letter Agreement and the Consulting Agreement.   These were material facts which Holder had never disclosed to Plaintiffs.

52.   Since Holder was in knowing violation of the 2004 Employment Agreement and the Amendment thereto, and the Consulting Agreement at the time he executed the January 28, 2005 Letter Agreement and the Consulting Agreement, the compensation he received pursuant to the January 28, 2005 Letter Agreement and the Consulting Agreement was fraudulently obtained.  Holder omitted to state material facts to Plaintiffs, and Plaintiffs relied upon Holder's omission of material facts to its detriment.

53.   Since Holder obtained the compensation paid to him by Plaintiffs through fraud, Plaintiffs are entitled to rescission of the January 28, 2005 Letter Agreement and the Consulting Agreement and a refund of the compensation paid to Holder thereunder.

### FIFTH CAUSE OF ACTION
### AS TO DEFENDANTS FERREL LAW AND FERRELL INVESTIGATIONS
(Tortious Interference with Contract)

54.   Plaintiffs repeat and reallege paragraphs 1 through 53 as if set forth fully herein.

55.   Upon information and belief, in January 2005, Holder joined Ferrell Investigations, an affiliate of Ferrell Law, and was appointed President of Ferrell Investigations.

12

Upon information and belief, Holder actively performed investigative services on behalf of Ferrell Law and Ferrell Investigations.

56.     Ferrell Law and Ferrell Investigations had knowledge of the 2004 Employment Agreement and Amendment thereto, the fully executed January 28, 2005 Letter Agreement and the fully executed Consulting Agreement and Holder's restrictive obligations to Kroll.

57.     Ferrell Law and Ferrell Investigations intentionally and without justification caused Holder to breach the fully executed 2004 Employment Agreement and Amendment thereto, the fully executed January 28, 2005 Letter Agreement and the fully executed Consulting Agreement, as detailed above.

58.     As a result of Ferrell Law and Ferrell Investigations's tortious interference, Plaintiffs have sustained damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## AS TO DEFENDANTS FERREL LAW AND FERRELL INVESTIGATIONS
(Aiding and Abetting Breach of Fiduciary Duty)

59.     Plaintiffs repeat and reallege paragraphs 1 through 58 as if set forth fully herein.

60.     As an employee and consultant of Kroll, Holder owed Kroll the fiduciary duty to act at all times in the utmost good faith and in Kroll's best interests.

61.     As set forth above, Holder breached his common law fiduciary duties to Kroll by joining the firm of Ferrell Investigations and actively performing investigative services on behalf of Ferrell Law and Ferrell Investigations in direct competition with Kroll Associates while engaged by Kroll as an employee and consultant.

13

62.   Ferrell Law and Ferrell Investigations induced Holder to breach his fiduciary duties owed to Kroll and provided substantial assistance to Holder as he breached his fiduciary duties owed to Kroll.

63.   As a result of Ferrell Law and Ferrell Investigations's aiding and abetting Holder's breach of his fiduciary duties, Plaintiffs suffered, and will continue to suffer, irreparable injury in addition to monetary damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

(a)   on the first cause of action, that Plaintiffs have judgment against the Holder in a sum to be determined at trial, but in any event, not less than $920,000;

(b)   on the second cause of action, that Plaintiffs have judgment against Holder in a sum to be determined at trial, but in any event, not less than $920,000;

(c)   on the third cause of action, that Plaintiffs have judgment against Holder in a sum to be determined at trial;

(d)   on the fourth cause of action, in the alternative, the Court should rescind the January 28, 2005 Letter Agreement and the Consulting Agreement and force Holder to return all compensation paid thereunder, plus interest;

(e)   on the fifth cause of action, that Plaintiffs have judgment against Ferrell in a sum to be determined at trial;

(f)   on the sixth cause of action, that Plaintiffs have judgment against Ferrell in a sum to be determined at trial;

(g)   that Plaintiffs be awarded its full costs and reasonable attorneys' fees; and

·14

(h)     that Plaintiffs be granted such other and further relief as the Court deems

just and proper.

Dated:      New York, New York
            June 16, 2008

                                        DAVIS & GILBERT LLP

                                        By: _____
                                            Paul F. Corcoran, Esq.
                                            Allie Lin, Esq.
                                            1740 Broadway
                                            New York, New York 10019
                                            (212) 468-4800
                                            pcorcoran@dglaw.com
                                            alin@dglaw.com

                                        Attorneys for Plaintiffs Kroll Inc.
                                        and Kroll Associates, Inc.

15

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____   District of   _____ New York _____

KROLL INC. and KROLL ASSOCIATES, INC.,

## SUMMONS IN A CIVIL ACTION

V.

FRANK L. HOLDER, FERRELL LAW, P.A., and
FERRELL INVESTIGATIONS & SECURITY, INC.

CASE NUMBER:   06-Cv-4657 (RJH)

RUSH

TO: (Name and address of Defendant)

FERRELL LAW, P.A.
201 South Biscayne Boulevard
Miami, Florida 33131

.REC'D _____
SERVED _____
DATE __ 6-20-08
. TIME __ 11:05am
P.S. __ WG
· (PRINT/SIGN NAME)

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Davis & Gilbert LLP
1740 Broadway, 21st Floor
New York, New York 10019

CERTIFIED IN THE CIRCUIT
COUNTY/COURT #.2 4440

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

CLERK

/ JUN 1 6 2008

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01)  Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                    Date                    *Signature of Server*

                              _____
                                   *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

____Southern____ District of ____New York____

KROLL INC. and KROLL ASSOCIATES, INC.,

**SUMMONS IN A CIVIL ACTION**

V.

FRANK L. HOLDER, FERRELL LAW, P.A., and
FERRELL INVESTIGATIONS & SECURITY, INC.

CASE NUMBER:   06-Cv-4657 (RJH)

RUSH

TO: (Name and address of Defendant)

FERRELL INVESTIGATIONS & SECURITY, INC.,
201 South Biscayne Boulevard
Miami, Florida 33131

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Davis & Gilbert LLP
1740 Broadway, 21st Floor
New York, New York 10019

REC'D
DATE - 6-20-08
TIME - 11:05 AM
P.S. - MG
(PRINT/SIGN NAME)

CERTIFIED IN THE CIRCUIT
COUNTY/COURT # ____

an answer to the complaint which is served on you with this summons, within ____20____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

CLERK

(By) DEPUTY CLERK

DATE      JUN 1 6 2008

6-16-08

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                      Date                          *Signature of Server*

                                    _____
                                         *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.